LEAKSVILLE-SPRAY INSTITUTE ET AL. v. B. FRANK MEBANE.

(Filed 27 May, 1914.)

### 1. Contracts—Consideration—Legal Rights.

Where one is induced to part with a legal right of value upon a promise by another to do a certain thing, there is a sufficient consideration to support the agreement and render it enforcible; and the mere inadequacy of the consideration may not be questioned.

### 2. Same—Sale of Stock—Trials—Evidence—Questions for Jury.

The plaintiff and defendant having agreed to take advantage of a legislative enactment and its provisions in establishing a technical school at S., agreed that a certain textile school at S. should properly be used there in that connection, and that it would be advantageous to also acquire, in connection with it, a certain furniture factory in which the plaintiff owned stock, the shareholders to sell their stock upon long-term notes ·to the textile school. There was evidence tending to show, in plaintiff's behalf, that he would only sell his stock in the factory upon condition that the defendant would give his note therefor, and so informed the defendant, who thereupon gave a note with the textile school corporation in the amount named, and the plaintiff surrendered his shares of stock. In an action by the plaintiff upon the note, the defendant pleaded as a defense the want of consideration for the note, and it was held that it was for the jury to determine whether the note was given upon the condition named, the evidence being conflicting, and if so given, the note was made for a sufficient consideration to enforce its payment.

### 3. Contracts—Pleadings—Consideration—Bills and Notes—Trials—Evidence—Impeachment.

In an action upon a note given in the endeavor to establish a technical school at S., in which both the plaintiff and defendant were interested, the defense was interposed that the defendant should not pay the note in the event the school was not established, and that he only obligated himself to use his best efforts to establish the school, which he had done: *Held*, evidence that the plaintiff held certain of his property at too high a value for the promotion of the enterprise is irrelevant; and the failure to vote for the school is not sufficient or competent to impeach the plaintiff's integrity in· the matter.

4. Trials—Character Witnesses—Impeachment—Special Acts.

> Where one witness is introduced to prove the general charac-
> ter of another witness, special acts tending to impeach the latter
> may not be inquired into on cross-examination; and it is held,
> in this case, if the matter sought to be elicited were true, it
> would not be sufficient for impeachment.

APPEAL by defendant from *Lane, J.,* at November Term,
1913, of ROCKINGHAM.

This is an action by the trustees of the Leaksville-Spray
Institute to recover $1,500, alleged to be due on a certain paper-
writing, not under seal, executed by the defendant on or about
1 August, 1908, by which he promised to pay the plaintiffs,
sixty days after date, $1,500.

The principal defense relied on by the defendant is that there
was no consideration to support the promise.

The facts leading up to the execution of the paper-writing
are as follows:

"In 1907, the General Assembly of North Carolina chartered
the Spray School of Technology, and designated as trustees,
among others, one of the plaintiffs, D. F. King, and the defend-
ant, B. Frank Mebane. This act provided, among other things,
that a plant for actual demonstration work should be estab-
lished in connection with the school. The defendant Mebane
became active in his efforts to establish the school, and one of
the plaintiffs, D. F. King, who was also designated as a trustee
of the school, urged that the school should be established at
Leaksville, and that the Leaksville-Spray Institute, in which the
said King was largely interested, might be purchased and used
in connection with the Spray School of Technology; and a
price for this property was named by the said D. F. King, as
appears from the record, which, as the defendant Mebane under-
stood, would cost the Spray School of Technology about $18,000,
most of the stockholders of the Leaksville-Spray Institute hav-
ing agreed to donate their stock free of charge.

"The defendant Mebane secured twelve of the corporations
at Spray to agree to give $500 each for a period of twenty
years, aggregating $120,000, toward the purchase of this prop-

erty and the maintenance of the school, which fund should be used to supplement the appropriation of $5,000 annually, which the State had provided in the act incorporating the Spray School of Technology, to be available whenever a suitable site, buildings, etc., were procured. That the defendant also induced Mr. Andrew Carnegie to donate $50,000 for a similar purpose. The American Warehouse Company of Spray was one of the contributing corporations that entered into this arrangement."

It also became desirable to acquire the property of the Leaksville Furniture Factory in the establishment of the School of Technology, which was located about one-half mile from the Leaksville-Spray Institute, and which was at that time leased to the American Warehouse Company at an annual rental of 6 per cent on the amount of the capital stock.

The plaintiff King owned stock in the furniture company, and also in the Leaksville-Spray Institute, and the latter company was indebted to him in the sum of about $18,000.

There is a conflict of evidence as to the agreement to buy the stock of the furniture company, the evidence of the plaintiff tending to prove that it was bought by the defendant, and the evidence of the defendant that it was bought by the American Warehouse Company.

After a part of the stock of the furniture company was bought, a question was raised as to whether the property of the furniture company, when purchased, would be used in connection with the school or for other purposes, and the plaintiff refused to sell his stock until further assurances were given.

The defendant then executed the paper-writing sued on, and the plaintiff King and others sold their stock in the furniture company.

There is also a conflict of evidence as to the agreement when the paper-writing was executed, the evidence of the plaintiff tending to prove that the defendant agreed to pay the sum of $1,500 if he did not buy the Leaksville-Spray Institute, and that of the defendant that he was to pay the amount if he did not use his best efforts to establish the School of Technology.

The Leaksville-Spray Institute was not bought, and the defendant introduced evidence that he did all he could to establish the school.

The plaintiff King testified, among other things: "I received a message through Mr. J. W. Ivie from Mr. Mebane, prior to 1 August; my recollection is, only a few days. He said that Mr. Mebane had agreed to give a note for $1,500, and would pay that note if he didn't buy the Leaksville-Spray Institute property. At that time he had my proposition. I was not at the stockholders' meeting of the furniture factory when Mr. Mebane made his talk. I owned $1,500 stock in the furniture factory. I understood some of the stockholders of the furniture factory had sold their stock for these five-year notes. Some of them had declined. After I received the message from Mr. Ivie, sent by Mr. Mebane, I bought Mr. Norman's stock, $1,200; paid him $1,100, and the other $100 was to be put in the School of Technology. He was to give it. I gave him my obligation to pay the $1,100, and have paid it. I bought this stock after receiving the message from Mr. Mebane. I afterwards transferred my stock to Mr. Cabell Wall. Mr. Wall came over there and brought the notes for the transfer of the stock of the furniture factory. The notes were signed by the American Warehouse Company and B. Frank Mebane. We sold to B. F. Mebane. I told Mr. Wall that there was a $1,500 note to be executed by Mr. Mebane in this transaction, and I said, 'You will have to go back and get it before I transfer the stock.' He went back and got the note and brought it over, and I transferred the stock. I delivered the stock to Mr. Wall and took this $1,500 note. The $1,500 note was given at the time of the transfer of the stock and the taking of the notes for the stock. We made a demand on Mr. Mebane for the payment of this money for the benefit of the Leaksville-Spray Institute. Mr. Mebane admitted last court that he got this notice. Mr. Mebane never bought the Leaksville-Spray Institute nor the indebtedness, nor my stock."

His Honor charged the jury upon the question of consideration, among other things, as follows:

"The paper-writing sued on in this case is as follows:

On sixty days demand, I will pay to the order of D. F. King, Dr. John Sweaney, and B. F. Ivey, $1,500 (one thousand five hundred dollars), said parties to dispose of this amount in connection with the Leaksville-Spray Institute in any way they may see fit.

(Signed)    B. FRANK MEBANE.

Payable at the Bank of Spray, N. C.

"Now, gentlemen of the jury, this is not such a promise to pay money as either imports or presumes a consideration, and standing alone is not collectible in law; but it may become so if the ones to whom it is made can by the greater weight of the evidence satisfy the jury that it was made for a valuable consideration; and that is the contention of the plaintiffs in this case, that it was made for a valuable consideration, which contention is denied by the defendant Mebane, and which matter is to be determined by you in your answer to the first issue submitted to you. That first issue, along with three others, is submitted to the jury. That first issue reads: 'Was the paper-writing sued on based upon a consideration?'

"The court instructs you that a valuable consideration consists either in some right, interest, benefit, or profit accruing to the party who makes the payment, or some forbearance, detriment, loss, or responsibility, act or service given, suffered, or undertaken by the other to whom it is made.

"In order to support the contract, it is not required that the consideration shall be for the full value of the sum named in the contract, or for full value of the property passed. Mere inadequacy of consideration will not avoid a contract, in the absence of fraud, where a contract is legally sufficient on its face; and so full value was not required to support the simple promise, but it must be of some value.

"A contract is said to be an agreement by two parties entered into for a consideration to do or not to do a certain thing. In order to constitute a contract, there must be a mutual understanding, a meeting of minds, a mutual agreement.

"It is contended that you should find by the greater weight or the preponderance of the evidence in this case, from the evidence of Mr. Hopper and Mr. King, who, it is contended, when this paper was brought to him by Mr. Wall, only turned over the stock of the furniture factory upon the execution of this writing as a consideration for it. 'By the greater weight or preponderance of the evidence' is meant that evidence which weighs more when put in the scales, which has more convincing force, carries more conviction to your minds, whether it comes from one witness, or more, as the case may be.

"In order to constitute a valuable consideration, as I have told you, it is not necessary for the plaintiff to show that the consideration was an adequate one, but if you find from this evidence that the reason for the execution of this note by the defendant was anything of value to him, or necessary to him for the accomplishment of his business purposes at that time, then that would be a sufficient consideration; or if you should find from the evidence that part or either of them were induced to sell property to the defendant which he would not otherwise have sold except for the execution of this note, and that the property was of value, that would be a sufficient consideration.

"If you should find from the evidence in this case that the defendant desired to purchase stock of D. F. King and others in the furniture factory, that King and others refused to sell this stock to the defendant unless he would execute the note sued on, and in order to accomplish the purchase of this stock the defendant was required to execute the note, and that this stock was of some value, then there was a sufficient consideration for the note.

"If you find by the greater weight of the evidence that before Mr. King or others here transferred the stock of the furniture factory to the defendant, that they required this defendant to execute and deliver to them the note in controversy, and the stock in it was of some value, then that would be a sufficient legal consideration for the execution of the note, and you will answer the first issue 'Yes.' "

The defendant.excepted to this charge, and also by motion to nonsuit and prayers for instruction raised the question that there was no evidence of a consideration.

There was a verdict and judgment for the plaintiffs, and the defendant excepted and appealed.

*Manning & Kitchin and A. W. Dunn for plaintiffs.*

*A. D. Ivie, C. O. McMichael, Brooks, Sapp & Williams for defendant.*

ALLEN, J., after stating the case: The authorities fully support the charge of his Honor: *Brown v. Ray,* 32 N. C., 73; *Faust v. Faust,* 144 N. C., 386; *Kirkman v. Hodgin,* 151 N. C., 591. In the first of these cases *Pearson, C. J.,* said: "To make a consideration it is not necessary that the person making the promise should receive or expect to receive any benefit. It is sufficient if the other party be subjected to loss or inconvenience. A trust or confidence reposed, by reason of an undertaking to do an act, is held to be a sufficient consideration to support an action on the promise"; and this was approved in the last case cited.

In 9 Cyc., 312, the author cites many authorities to support the position that "There is a consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has the right to do, whether there is any actual loss or detriment to him, or actual benefit to the promisor or not."

In *Hamer v. Sidway,* 124 N. Y., 538 (21 A. S. R., 693), the Court applied this principle to a contract to refrain from the use of tobacco and intoxicating liquors, and said:

"The defendant contends that the contract was without consideration to support it, and therefore invalid. He asserts that the promisee, by refraining from the use of liquor and tobacco, was not harmed, but benefited; that that which he did was best for him to do, independently of his uncle's promise, and insists that it follows that, unless the promisor was benefited, the contract was without consideration; a contention which, if well founded, would seem to leave open for controversy in many

cases whether that which the promisee did or omitted to do was in fact of such benefit to him as to leave no consideration to support the enforcement of the promisor's agreement. Such a rule could not be tolerated, and is without foundation in law. The Exchequer Chamber, in 1875, defined consideration as follows: 'A valuable consideration in the sense of the law may consist either in some right, interest, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other. Courts 'will not ask whether the thing which forms the consideration does in fact benefit the promisee or a third party, or is of any substantial value to any one. It is enough that something is promised, done, forborne, or suffered by the party to whom the promise is made, as consideration for the promise made to him.' Anson on Contracts, 63. 'In general, a waiver of any legal right at the request of another party is a sufficient consideration for a promise.' Parsons on Contracts, 444. 'Any damage, or suspension, or forbearance of a right will be sufficient to sustain a promise.' 2 Kent's Com. (12 Ed.), 465.

"Pollock, in his work on contracts, page 166, after citing the definition given by the Exchequer Chamber already quoted, says: 'The second branch of this judicial description is really the most important one. Consideration means, not so much that one party is profiting, as that the other abandons some legal right in the present or limits his legal freedom of action in the future, as an inducement for the promise of the first.' " *Hamer v. Sidway,* 21 Am. St. Rep. (N. Y.), 693.

Applying these principles, there can be no doubt that there was evidence of a consideration sufficient to support the promise of the defendant, as the plaintiff testified that he refused to sell his stock in the furniture company except upon condition that the defendant executed the paper declared on in the complaint.

The exceptions to the evidence do not require extended discussion. The first six exceptions are to the refusal of the court to permit the defendant to prove that the furniture factory and another lot sold by the plaintiff King to the defendant were worth less than was paid for them.

The evidence offered was remote, being largely the selling price at a bankruptcy sale some time after the purchase of the property; but conceding that it would furnish some evidence of value, it was not relevant to any issue involved in this controversy.

The fact that King was benefited by the sale of his stock, if shown to be true, would not destroy the consideration for the promise of the defendant, because the consideration consists in yielding the legal right to retain the stock, and to impose the conditions upon which he would sell.

Nor would the evidence excluded justify the inference that the plaintiff placed such exorbitant prices upon property owned by him, which was needed for the school, as made it impossible for the defendant to establish the school, if this defense is pleaded by the defendant; but the special plea of the defendant is not that he could not perform on account of the conduct of the plaintiff, but that he was not required to pay if he used his best efforts to establish the school.

Opinions, honestly entertained, are too diverse as to the wisdom and propriety of the establishment of schools in particular localities for us to hold that the failure to vote for such schools is impeaching, which is the subject of the seventh exception.

The letter written by the plaintiff to the defendant, suggesting that he see the sheriff before his nomination, about the deposit of county funds in the Bank of Spray, would not necessarily be impeaching; but if it would have this effect, the defendant could not impeach the witness by proof of particular acts.

We have examined the remaining exceptions and find no error.

It appears to us from the record that the defendant has not been seeking profit or advantage for himself, and that he has been actuated by high public motives; but there is evidence to support the verdict, and we cannot disturb it.

No error.