HARRY ADCOCK, ADMINISTRATOR OF THE ESTATE OF ELBERT ABSON ADCOCK v. LIFE ASSURANCE COMPANY OF CAROLINA

No. 7616DC354

(Filed 6 October 1976)

1. Evidence § 19; Insurance § 37— credit life insurance — suicide exclusion — hospital records showing depression of insured — remoteness

    In an action to recover the proceeds of two credit life insurance policies issued to plaintiff's intestate by defendant where each policy had a provision limiting the liability of the company in a case of suicide and where defendant alleged that deceased died by his own hand,

---

---

the trial court did not err in not admitting the records of deceased's hospitalization for depression six months prior to the shooting, since the medical evidence was too remote to be of probative value.

2. **Insurance § 37— credit life insurance — suicide exclusion — burden of proof**

Where a suit is brought on a life insurance policy of general coverage but making suicide an excepted risk, the burden is on the defendant insurer to establish suicide by a preponderance of evidence; therefore, the trial court properly concluded that defendant insurer failed to carry its burden of proof in this action where there was sufficient evidence presented to enable the trier of fact to find that suicide was not the only logical or possible manner of death.

APPEAL by defendant from *Britt, Judge.* Judgment entered 19 January 1976 in District Court, SCOTLAND County. Heard in the Court of Appeals 14 September 1976.

Plaintiff, as administrator, brought this action for the proceeds of two credit life insurance policies issued to plaintiff's intestate, Elbert Abson Adcock, by the defendant, Life Assurance Company of Carolina. The amount of insurance in force at decedent's death was $3,635.41. Each policy had a provision limiting the liability of the company in a case of suicide to an amount equal to the premiums paid. The action was heard before Judge Britt without a jury.

The defendant alleged that deceased died by his own hand. Its evidence tended to show that the plaintiff found the deceased wounded and unconscious in the deceased's bedroom on Sunday night, 9 June 1974. The sheriff's deputies arrived at approximately 9:30 p.m. and found the deceased lying face-up in a pool of blood on the bedroom floor. Blood stains were also noted on the bed and near the door. A .22 caliber rifle containing fifteen live rounds and one spent cartridge were found at the deceased's feet. The deceased had been shot in the head with one bullet. The bullet entered the head near the right ear and exited from the top, right portion of the back of the head. Deceased was right-handed. He was taken to the hospital unconscious, where he remained in that state until his death on 2 July 1974.

Defendant's evidence further tended to show that the sheriff's investigation disclosed no evidence of a struggle, theft, or robbery. There was no alcohol or odor of alcohol about the body or room. No gun cleaning equipment was found by the deputies in the room.

The defendant offered evidence of a conversation between the deceased and the sheriff two weeks prior to the shooting in which the deceased was described as being despondent about the condition of his wife, who had suffered a stroke and was never expected to recover. Defendant attempted to introduce hospital records showing that the deceased had been hospitalized for depression and chronic alcoholism in December 1973; that the depression resulted from his wife's condition; and that while hospitalized, defendant talked of suicide. The records were not allowed in evidence on the grounds that they were too remote.

Plaintiff's evidence tended to show that the deceased was not an alcoholic; that the deceased hunted frequently and was planning to go hunting at the time of the shooting; that deceased had borrowed plaintiff's gun cleaning equipment two days prior to the shooting; and that the gun cleaning equipment was present in the bedroom when plaintiff discovered the body. Plaintiff's evidence further tended to show that there were visible traces of blood not only in the bedroom, but also on a washcloth and mirror in the bathroom, on the wall of the hall leading from the bedroom to the bathroom, and on the phone located in the hall. Finally, plaintiff's evidence tended to show that the deceased, while upset with his wife's condition, had reconciled himself to her plight and had begun to make plans for the future, including preparations to move to a new town and acceptance of a new job which was to begin on 1 July 1974.

Judge Britt ruled that defendant had failed to meet its burden of proof on the issue of suicide and rendered judgment for plaintiff. From this judgment defendant appealed.

*Mason, Williamson, Etheridge and Moser, by Andrew G. Williamson and Daniel B. Dean, for the plaintiff.*

*Womble, Carlyle, Sandridge & Rice, by John E. Hodge, Jr., for the defendant.*

BROCK, Chief Judge.

[1] Defendant first contends that the trial court erred in not admitting the records of deceased's hospitalization six months prior to the shooting. Defendant maintains the admission of this evidence would tend to establish in the deceased a despondent and suicidal state of mind.

"Whether the existence of a particular state of affairs at one time is admissible as evidence of the same state of affairs at another time, depends altogether upon the nature of the subject matter, the length of time intervening, and the extent of the showing, if any, on the question of whether or not the condition had changed in the meantime. The question is one of materiality or remoteness of the evidence in the particular case, and the matter rests largely in the discretion of the trial court." 1 Stansbury, N. C. Evidence (Brandis rev.), § 90.

A discretionary ruling of the trial court is conclusive on appeal, absent a showing of abuse of discretion or some imputed error of law or legal inference. *Privette v. Privette,* 30 N.C. App. 41, 226 S.E. 2d 188 (1976); 1 Strong, N. C. Index 2d, Appeal and Error, § 54, pp. 213-14.

We find no abuse of discretion in the court's ruling that medical evidence of a depressed state of mind was too remote to be of probative value as to a suicidal state of mind six months later. Nor do we find any imputed error of law or inference of law. The court found as fact that the decedent had adjusted to the cause of his despondency and was planning and preparing for a future that reflected his adjustment. These findings based on competent evidence sufficiently show a change of condition in the decedent's state of mind that undermines any materiality the evidence in the hospital records might have had.

The fact that the hospital records were excluded as remote prior to the evidence that established a change of condition does not affect our holding. The exclusion of evidence is not prejudicial when it appears that it could have no material bearing on the issue or could not alter the rights of the parties or affect the result, or where appellant fails to show that the excluded evidence was competent or material. 1 Strong, N. C. Index 2d, Appeal and Error, § 49, pp. 198-99.

[2]   We find no merit in the defendant's other contention that the trial court's findings of fact and conclusions of law were unsupported by or contrary to the evidence and the law. Where a suit is brought on a life insurance policy of general coverage but making suicide an excepted risk, the burden is on the defendant insurer to establish suicide by a preponderance of evidence. *Paint Co. v. Insurance Co.,* 24 N.C. App. 507, 211 S.E. 2d 498 (1975); 2 Stansbury, N. C. Evidence (Brandis rev.),

§ 224. In the case at bar there was sufficient evidence presented to enable the trier of fact to find that suicide was not the only logical or possible manner of death. Thus the court's conclusion that defendant failed to carry its burden of proof was a proper one.

The judgment of the trial court is

Affirmed.

Judges VAUGHN and MARTIN concur.