JUNE ELLEN DRAIN v. UNITED SERVICES LIFE INSURANCE COMPANY

No. 863SC554

(Filed 7 April 1987)

1. **Rules of Civil Procedure § 12.1— denial of motion to dismiss for failure to state claim—no appellate review after judgment on merits**

Where an unsuccessful motion to dismiss is grounded on an alleged insufficiency of the facts to state a claim for relief, and the case proceeds to judgment on the merits, the unsuccessful movant may not on appeal from the final judgment seek review of the denial of the motion to dismiss.

2. **Insurance § 13— life insurance—effective date of policy—sufficiency of evidence**

Plaintiff's evidence was sufficient to go to the jury in an action to recover under a life insurance policy where the jury could find that, although the application for the policy provided that the policy would become effective on a date after the date of the insured's death, an amendment to the policy had backdated its effective date to a time preceding the insured's death; the premium for the policy was not required to be paid before the policy became effective and, in any event, the insurer had waived the right to receive a premium payment before beginning effective coverage; and a valid contract of insurance had thus been entered into before the insured's death.

3. **Insurance § 37— life insurance—contents of other policies—irrelevancy**

Evidence of the contents of insured's other life insurance policies and the circumstances under which their death benefits were paid was irrelevant in determining when effective coverage of the insured was to begin under defendant's life insurance policy and whether the first premium had to be paid before a valid contract was formed. N.C.G.S. § 8C-1, Rule 401.

4. **Evidence § 31— best evidence rule—amount of insurance applied for**

Testimony by the beneficiary as to the amount of life insurance coverage applied for by the insured did not violate the best evidence rule where the contents of the application for insurance were not at issue. N.C.G.S. § 8C-1, Rule 1002.

5. **Insurance § 37.2— life insurance—possible suicide—state of mind of insured—prior marital difficulties**

The trial court did not err in ruling that prior separations between plaintiff life insurance beneficiary and the insured which occurred at least eighteen months before insured's death were too remote to be of probative value in establishing insured's state of mind at the time of his death.

6. **Death § 1; Evidence § 28.3; Insurance § 37.2— suicide as cause of death—statements in death certificate and medical examiner's report—inadmissibility**

Hearsay and conclusory statements listing suicide as the cause of death on an insured's death certificate and in the medical examiner's report were inadmissible to show the cause of death in an action on a life insurance policy. Such

**Drain v. United Services Life Ins. Co.**

statements were not rendered admissible by N.C.G.S. § 8C-1, Rule 392, permitting the introduction of self-authenticated copies of public records; N.C.G.S. § 130A-93(h), providing that certified copies of certain documents are *prima facie* evidence of facts stated therein; N.C.G.S. § 8C-1, Rule 803(9), permitting records of deaths made to a public office to be introduced at trial; or N.C.G.S. § 130A-392, permitting a county medical examiner's report to be introduced at trial.

Judge WELLS concurring.

APPEAL by defendant from *Griffin (William C.), Judge.* Judgment entered 10 January 1986 in Superior Court, CRAVEN County. Heard in the Court of Appeals 11 November 1986.

*Ward and Smith, P.A., by Kenneth R. Wooten, attorney for plaintiff appellee.*

*Sumrell, Sugg & Carmichael, by Rudolph A. Ashton, III and James R. Sugg, attorneys for defendant appellant.*

ORR, Judge.

Plaintiff brought this action to recover, as beneficiary, upon a policy of life insurance issued by defendant United Services Life Insurance Company. The policy was issued on the life of Paul Drain, plaintiff's husband. Defendant denied liability, based upon a number of grounds which will be dealt with in subsequent parts of this opinion.

Initially defendant made a motion to dismiss the action for failure to state a claim for relief. The court denied defendant's motion and the action proceeded to a jury trial on the issues.

At trial defendant made a motion for a directed verdict at the close of plaintiff's evidence and at the close of all the evidence. These motions were denied. The jury returned a verdict in plaintiff's favor, finding that a contract had been formed and that plaintiff was entitled to recover $95,166.00 minus a $90.66 premium for insurance coverage for the month of May. In response to the jury's decision, defendant made a motion for judgment notwithstanding the verdict, and in the alternative a motion for a new trial. The court also denied these motions. Defendant appeals the denial of the above five motions. We find no error in the trial court's rulings.

The facts necessary to an understanding of this decision are incorporated in the opinion set forth below.

## I.

[1]　Defendant first assigns as error the denial of its motion to dismiss the action for failure to state a claim for relief pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6).

In *Concrete Service Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 340 S.E. 2d 755 (1986), this Court specifically addressed this question and held:

> that where an unsuccessful motion to dismiss is grounded on an alleged insufficiency of the facts to state a claim for relief, and the case thereupon proceeds to judgment on the merits, the unsuccessful movant may not on an appeal from the final judgment seek review of the denial of the motion to dismiss.

79 N.C. App. at 682-83, 340 S.E. 2d at 758-59.

Therefore, in conformity with our prior decision on this question, we overrule defendant's first assignment of error.

## II.

[2]　Defendant's second and third assignments of error contend that the trial court improperly denied defendant's motions for a directed verdict and motion for judgment notwithstanding the verdict. In each motion defendant argued that the evidence established as a matter of law that there was no life insurance contract existing between defendant and Paul Drain.

A motion for judgment notwithstanding the verdict is essentially a renewal of an earlier motion for a directed verdict. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1974). "Accordingly, if the motion for directed verdict could have been properly granted, then the subsequent motion for judgment notwithstanding the verdict should also be granted." *Penley v. Penley*, 314 N.C. 1, 10, 332 S.E. 2d 51, 57 (1985). Also, a motion for a judgment notwithstanding the verdict may not address issues on appeal not raised in the motion for a directed verdict. *Miller v. Motors, Inc.*, 40 N.C. App. 48, 251 S.E. 2d 925, *disc. rev. denied*, 297 N.C. 301, 254 S.E. 2d 917 (1979). For the above reasons, this Court will consider the three motions together in determining if the denial of each motion was an error.

In considering a motion for directed verdict or a motion for judgment notwithstanding the verdict,

> the trial court must review all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor.

*Penley v. Penley*, 314 N.C. at 11, 332 S.E. 2d at 57. Accordingly, the Supreme Court has also held that a motion for judgment notwithstanding the verdict is cautiously and sparingly granted. *Investment Properties v. Allen*, 281 N.C. 174, 188 S.E. 2d 441 (1972), *rev'd on other grounds*, 283 N.C. 277, 196 S.E. 2d 262 (1973).

In the case *sub judice*, plaintiff testified at trial that she and her husband, Paul Drain, met with James Diffee, an agent for defendant, to discuss life insurance coverage on 28 April 1983. At this meeting Paul Drain, with Mr. Diffee's aid, filled out and submitted an application for life insurance with defendant. The policy applied for would provide death benefits of $95,166.00 upon Drain's death, payable to plaintiff, and coverage under the policy was to become effective at the later date of either approval of the application or 16 June 1983. Agent Diffee also gave Drain allotment cards, permitting premium payments to be deducted directly from Drain's paycheck. He did not collect any payment from Drain at this meeting.

The evidence at trial further disclosed that Drain's application for life insurance was approved by defendant on 5 May 1983. Later in May 1983, between the 20th and 25th, Agent Diffee met and spoke with Paul Drain several times. As a result of these discussions, the policy was amended and on 25 May 1983 Agent Diffee gave Drain additional forms to fill out including a second allotment card, containing Drain's new insurance policy number.

Shortly thereafter, the Drains received a letter dated 26 May 1983 from George M. Bell, Agent Diffee's supervisor and a vice president of defendant, which said:

Dear Paul and June:

Jim Diffee, your Field Representative, has informed us your family is now 100% insured with the United Services Life Companies.

We appreciate your business, and we welcome you to the large group of policyowners whose families are 100% insured with *US*. We believe the rapid growth of this group is a compliment to the service provided by our Field Representatives.

If you know any colleagues who are interested in life insurance, we hope you will recommend Jim to them.

Again, thank you for your confidence in *US*.

Agent Diffee received a copy of Drain's life insurance policy and the amendment to that policy from defendant the week of 6 June 1983. However, when Agent Diffee attempted to deliver the documents to Drain and collect the premium due, he was informed that Drain had died on or about 10 June 1983. Thereafter Agent Diffee, at plaintiff's request, visited the home of plaintiff's parents, where plaintiff was staying, and spoke with her father regarding Drain's life insurance policy with defendant. During this visit plaintiff's father showed Agent Diffee the 26 May 1983 letter received from Bell. Plaintiff testified that she overheard Agent Diffee tell her father, after he saw the letter, "that from this letter he felt his company had made a grave error."

At the time of this visit Agent Diffee had Drain's insurance policy and the amendment in his possession, but did not give these documents to plaintiff. Instead, Agent Diffee mailed the documents directly to his supervisor, Vice President Bell, pursuant to Bell's orders. After Bell transferred the documents to defendant's legal department for review, they were destroyed.

When original documents are destroyed, secondary evidence may be submitted to establish the documents' contents. *State v. Baynes*, 222 N.C. 425, 23 S.E. 2d 344 (1942). Defendant submitted a reconstructed policy taken from microfilm records as secondary evidence of the contents of Drain's life insurance policy. However, defendant offered no records from which to reconstruct the contents of the amendment to the policy. As secondary evidence of the contents of the amendment, plaintiff offered the 26 May 1983 letter signed by Vice President Bell.

Based on the above evidence, plaintiff argued that the 26 May 1983 letter evinced that the amendment to the policy either backdated it to 26 May 1983, the date of the letter, or to 16 May 1983, a month earlier than the effective date of 16 June 1983 set forth in the original application. In the alternative, plaintiff contended, the letter reflected defendant's intent to waive the later effective date of 16 June 1983, specified on the policy application, and, instead, begin effective coverage on 5 May 1983, the date the application was approved by defendant.

In support of both contentions plaintiff introduced a provision of Drain's reconstructed insurance policy submitted by defendant, which held:

> . . . a Vice-President . . . of the Company has the power, on behalf of the Company, to change, modify, or waive any provisions of this Policy. Any changes, modifications, or waivers must be in writing.

In support of her argument that the amendment backdated the effective date of the policy, plaintiff presented the following evidence. First, the above mentioned provision gave Bell, as vice president, the authority to make such an amendment. Second, Agent Diffee testified that in some cases defendant would backdate the effective date of a life insurance policy, and then later collect insurance premiums to cover the earlier time period. Third, Agent Diffee acknowledged that he intended to collect the premiums for Drain's policy when he delivered the amended policy to Drain. From this, plaintiff reasoned, the letter notifying the Drains that they were 100 percent covered was secondary evidence that Bell had authorized an amendment to change the effective date. Moreover, plaintiff noted, the letter itself, as a writing, would also qualify as an amendment changing the effective date of Drain's policy.

In support of plaintiff's alternative argument of waiver, plaintiff again relied on the above provision. This provision also authorized Bell to waive the later effective date listed in the application.

> [A]n insurer may be found to have waived a provision or condition in an insurance policy which is for its own benefit. . . . [A] provision . . . is waived by any conduct on the part

of the insurer or its authorized agent inconsistent with an intention to enforce a strict compliance with the insurance contract in such regard.

*Brandon v. Insurance Co.*, 301 N.C. 366, 370-71, 271 S.E. 2d 380, 383 (1980).

Once again plaintiff contended, the letter, as a writing, reflected a waiver of the later effective date in conformity with the provision in the contract. In notifying plaintiff and Drain that the policy was in effect, the letter was conduct inconsistent with an intent to delay the effective date until 16 June 1983.

Neither plaintiff nor Drain paid any premium on this policy. So to support her contention that consideration was not at issue in formation of this contract, plaintiff submitted evidence of another provision contained in defendant's reconstructed copy of Drain's insurance policy. This provision, plaintiff argued, negated the need for a premium payment by providing that: "Proceeds payable at the death of the Insured will be . . . any insurance on the life of the Insured provided by benefit riders . . . less . . . any unpaid premium which applied to a period prior to and including the Policy month in which the Insured dies." Thus, because the premium for the month of May 1983 could be deducted from the proceeds payable, consideration for the contract was not at issue.

Furthermore, the 26 May 1983 letter may also support the inference that defendant waived the right to receive a premium payment before beginning effective coverage. Payment of a premium is a condition precedent to insurance coverage, unless payment is waived. *Engelberg v. Insurance Co.*, 251 N.C. 166, 110 S.E. 2d 818 (1959) (per curiam); *Allen v. Insurance Co.*, 215 N.C. 70, 1 S.E. 2d 94 (1939); *Thomas v. Ray*, 69 N.C. App. 412, 317 S.E. 2d 53 (1984). However, it is well established that a provision inserted in a policy for the benefit of the insurer may be waived, and such a waiver will be found when it is shown that there is

a valid agreement to postpone payment or that the . . . [insurer] has so far recognized an agreement to that effect or otherwise acted in reference to the matter as to induce the policy-holder, in the exercise of reasonable business prudence, to believe that prompt payment is not expected and that the forfeiture on that account will not be insisted on.

*Murphy v. Insurance Co.*, 167 N.C. 334, 336, 83 S.E. 461, 462 (1914); *Thompson v. Insurance Co.*, 44 N.C. App. 668, 262 S.E. 2d 397, *disc. rev. denied*, 300 N.C. 202, 269 S.E. 2d 620 (1980).

As the evidence above tends to show, several crucial documents were not available at the trial; notably, the original policy issued to Drain and the later amendment to that policy. Under these circumstances it would not be unreasonable for the jury, considering the evidence in the light most favorable to the plaintiff and resolving all contradictions, conflicts, and inconsistencies in her favor, to find that the effective date of Drain's insurance policy was backdated to a time preceding Drain's death. The evidence would also support a jury finding that the premium for this insurance policy need not be paid before the policy became effective. These conclusions would then support the theory that a valid contract between Drain and defendant had been entered into before Drain died.

For the above reasons, this Court finds no error in the trial court's denial of defendant's motions for directed verdict and motion for judgment notwithstanding the verdict.

III.

Defendant's fourth assignment of error challenges the trial court's denial of the motion for a new trial. In support of this contention defendant lists four actions of the trial court, each of which it argues constituted a reversible error.

[3]   First, defendant assigns as error the trial court's refusal to permit defendant to introduce evidence of other life insurance owned by Drain which paid death benefits to plaintiff upon Drain's death.

This evidence is relevant, defendant argues, because it shows that Drain's other life insurance policies had been in effect for several years, that all necessary premium payments had been paid, and that the suicide exclusion clauses in these policies had expired.

The relevancy of evidence to be admitted at trial is governed by N.C.G.S. § 8C, Rule 401. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The contents of Drain's other life insurance policies and the circumstances under which their death benefits were paid, would not aid the jury in determining when effective coverage of Drain was to begin under the defendant's life insurance policy or what the terms of the amendment to this policy were. Neither could Drain's other life insurance policies help the jury in determining whether the first premium payment must be made before a valid contract can be formed. Since these were the crucial questions before the jury, the failure of defendant's proposed evidence to make any necessary fact in this case more probable or less probable renders it irrelevant.

Defendant also contends that this evidence would be relevant in showing that the deceased had owned a substantial amount of life insurance, and thus, did not intend to purchase more life insurance from defendant. Defendant, however, failed to present this theory of relevancy to the trial court when attempting to enter this evidence. Therefore, the trial court's denial of admission of this evidence under this theory was not properly preserved for review by this Court, pursuant to Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure.

It should be noted, though, that most of the challenged evidence was admitted at trial. Defendant's Exhibits 5A, 5B, and 5C, which were individual pages in a Comparative Information Form, listed other insurance policies held by Drain and noted that the suicide exclusion clauses had expired on these policies.

For the above reasons, this Court concludes that evidence of other insurance policies owned by Drain was not relevant in deciding the issues in this case, and was properly excluded at trial.

[4] Defendant's second argument contends that the trial court erred in permitting plaintiff to testify as to the amount of insurance coverage applied for by Drain with defendant.

Defendant contends that N.C.G.S. § 8C, Rule 1002 required admission of the original insurance application to establish the amount listed in its terms, and that plaintiff's testimony on this issue was prejudicial error.

Rule 1002, better known as the "Best Evidence Rule," requires the production of a document "only where the *contents* or *terms* of [the] document are in question." 2 Stansbury's N.C. Evi-

dence § 191 at 103 (Brandis rev. 1973); *McAdams v. Moser*, 40 N.C. App. 699, 701, 253 S.E. 2d 496, 499 (1979).

In the case *sub judice*, the contents of the application for insurance were not at issue. Neither party contested the terms of the insurance application. The parties focused instead on the impact of events occurring after the submission of the application.

Furthermore, the insurance application was admitted into evidence by the defendant; thus, permitting the jury to consider the information contained in the insurance application and rendering harmless plaintiff's testimony as to the amount of insurance coverage applied for by Drain.

Accordingly, this Court finds no error in the introduction of this testimony at trial.

[5] Defendant's third argument is that the trial court erred in refusing to permit defendant to enter evidence of prior marital conflicts between plaintiff and Drain. Defendant noted that it bore the burden of proving that Drain committed suicide. Consequently, defendant reasoned this evidence was relevant to establish Drain's state of mind at the time of his death and to refute plaintiff's testimony showing the marriage to be happy and stable. The trial court rejected defendant's request to enter this evidence, finding that it was too remote in time to be relevant in evaluating the events of this case.

> Whether the existence of a particular state of affairs at one time is admissible as evidence of the same state of affairs at another time, depends altogether upon the nature of the subject matter, the length of time intervening, and the extent of the showing, if any, on the question of whether or not the condition had changed in the meantime. The question is one of materiality or remoteness of the evidence in the particular case, and the matter rests largely in the discretion of the trial court. 1 Stansbury, N.C. Evidence (Brandis rev.), § 90.

*Adcock v. Assurance Co.*, 31 N.C. App. 97, 100, 228 S.E. 2d 654, 656 (1976). A discretionary ruling of the trial court is conclusive on appeal, absent a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision. *White v. White*, 312 N.C. 770, 324 S.E. 2d 829 (1985).

Defendant was unable to produce any evidence from which to infer that Drain's state of mind at the time of his death was influenced by marital difficulties, other than the evidence of prior separations between Drain and plaintiff, which occurred at least eighteen months before Drain's death on 10 June 1983.

After reviewing the evidence, we find that there was a rational basis for the trial court's ruling that evidence of the prior marital conflicts was too remote to be of probative value in determining Drain's state of mind at the time of his death. This Court concludes, therefore, that the trial court did not abuse its discretion, and overrules this assignment of error.

[6] In its fourth argument, defendant contends that statements listing suicide as the cause of death on Drain's death certificate and in the medical examiner's report were improperly excluded at trial.

Defendant argues that legislative intent permitting the use of such records at trial may be drawn from: (1) N.C.G.S. § 8C-1, Rule 902 which permits the introduction of self-authenticated certified copies of public records at trial; (2) N.C.G.S. § 130A-392 which permits a county medical examiner's report to be introduced at trial; and (3) N.C.G.S. § 130A-93, which states that certified records are prima facie evidence of the facts stated therein.

The admittance of death certificates as evidence at trial was previously addressed by the Supreme Court of North Carolina in *Branch v. Dempsey*, 265 N.C. 733, 145 S.E. 2d 395 (1965). In 1965 N.C.G.S. § 130-73, the statute authorizing admission of death certificates at trial, held that: "Any copy of the record of a . . . death, properly certified by the State Registrar, shall be *prima facie* evidence in all courts and places of the facts therein stated."

In *Branch*, the death certificate contained statements from unidentified sources as to how the deceased had sustained the injuries that caused his death. The Supreme Court noted that the coroner who signed the death certificate did not see the car accident causing the deceased's death, and had he been called as a witness could not have related the hearsay contained in the death certificate. For this reason, the statements as to how the injuries causing death were sustained could not become competent evidence simply by being repeated or summarized in a death certificate.

The Supreme Court then limited the use of a death certificate in a civil trial stating that:

The purpose of the statute appears to be to permit the death certificate to be introduced as evidence of the fact of death, the time and place where it occurred, the identity of the deceased, the bodily injury or disease which was the cause of death, the disposition of the body and possibly other matters relating to the death. We think it was not the purpose of the Legislature to make the certificate competent evidence of whatever might be stated thereon.

*Branch v. Dempsey*, 265 N.C. at 748, 145 S.E. 2d at 406.

Since the Supreme Court's decision in *Branch*, the statute pertaining to the admission of death certificates has undergone several revisions. In 1972 N.C.G.S. § 130-66 governed this issue and said in pertinent part that certified records, including death certificates, "shall be prima facie evidence of the facts therein stated." Again the Supreme Court was asked to determine if a death certificate could be used to establish how injuries causing a death were sustained. *State v. Watson*, 281 N.C. 221, 188 S.E. 2d 289, *cert. denied*, 409 U.S. 1043, 34 L.Ed. 2d 493 (1972). In *Watson*, a criminal trial, the Supreme Court concluded that admitting the "hearsay and conclusory statement contained in the death certificate" would violate a defendant's right to confrontation and his right to fundamental fairness in a criminal trial. *Id.* at 232, 188 S.E. 2d at 295.

The statute governing this issue, in the case *sub judice*, is N.C.G.S. § 130A-93(h), which holds that "[a] certified copy issued under the provisions of this section shall . . . be prima facie evidence of the facts stated in the document."

Another statute, which this Court must also consider in answering this question, is N.C.G.S. § 8C-1, Rule 803(9). Rule 803 governs exceptions to the hearsay rule and subsection nine of this statute permits records of deaths to be introduced as evidence, if the record was made to a public office pursuant to the requirements of law. The commentary to this subsection, however, states specifically that this exception "is not intended to permit the use of statements of the cause of death in a death certificate against a defendant in a criminal case." *Citing State v. Watson*, 281 N.C.

221, 188 S.E. 2d 289, *cert. denied*, 409 U.S. 1043, 34 L.Ed. 2d 493 (1972).

The same rationale underlying the Supreme Court's decisions in *Branch* and *Watson* continues to be valid. In the case *sub judice*, the coroner's statement on the death certificate that the gunshot wound killing Drain was intentionally self-inflicted, is not based on personal knowledge of the events which took place on 10 June 1983 and can only be described as hearsay and conclusory. The admission of such a statement would thwart the fairness of the trial and in essence shift the burden of proof on the issue of the cause of death from defendant to plaintiff. In addition, the official status of a public record would lend this hearsay greater credibility and weight in the eyes of the jury.

Therefore, we conclude that the exclusion of this statement on the death certificate was proper.

Defendant also argues that statements contained in the medical examiner's report, stating that investigators of the incident presumed the wound was self-inflicted, was properly admissible pursuant to N.C.G.S. § 130A-392, which states that "[r]eports of investigations made by a county medical examiner . . . may be received as evidence in any court or other proceeding."

This Court believes that the same fallacies inherent on a death certificate stating how injuries causing death were sustained would also be present in similar statements contained in a medical examiner's report. Therefore, this Court concludes that the statements listing suicide as the cause of death in the medical examiner's report were also properly excluded at trial.

After reviewing the record, this Court concludes that defendant received a trial free from prejudicial error.

No error.

Judges WELLS and BECTON concur.

Judge WELLS concurring.

The dispositive issue in this appeal is whether a contract of insurance was entered into between defendant and Paul Drain. Although Drain's application for insurance clearly provided that

the policy would become effective on the *later* date of approval of the application on 16 June 1983 and although Drain died before 16 June 1983, plaintiff offered evidence from which the jury could find that defendant waived the effective date provision of the application, and on the consideration of Drain's promise to pay premiums when due (his signed payroll allotment card) issued the policy sometime prior to 26 May 1983 (the date of defendant's letter of acceptance to the Drains).