LAWTON E. NICHOLS AND WIFE, ZILPHIA MARIE HIGH NICHOLS, GLENWOOD H. PERRY AND WIFE, JEAN F. PERRY, PLAINTIFFS v. SANFORD EARL WILSON AND WIFE, AGNES WILSON, DEFENDANTS

————

SANFORD EARL WILSON AND WIFE, AGNES WILSON, PLAINTIFFS v. LAWTON E. NICHOLS AND WIFE, ZILPHIA MARIE HIGH NICHOLS, GLENWOOD H. PERRY AND WIFE, JEAN F. PERRY, DEFENDANTS

No. 937SC391

(Filed 6 September 1994)

**1. Easements § 30 (NCI4th)— prescriptive easement— adverse use—inadequate evidence**

The trial court did not err by granting a directed verdict on the issue of a prescriptive easement on a cartway claim where

defendants Wilson, who were asserting the cartway claim as a part of a larger processioning proceeding, presented no evidence to rebut the presumption that any past use of the cartway was permissive; the testimony of a witness indicated that the owner of the property at the time the cartway was in use actually agreed to let people use the path; there was no evidence presented by the Wilsons to show that the cartway was used under a claim of right other than by the owners; and the Wilsons did not engage in upkeep and indicated that they had used the cartway with the permission of the owners and not because they thought they had a right to use it.

**Am Jur 2d, Easements and Licenses §§ 51, 52.**

2. **Boundaries § 25 (NCI4th)— processioning—location of boundary—court's determination of survey to be used**

There was no prejudice in a processioning proceeding where the trial court had earlier granted a motion for summary judgment on the issue of the legal determination of the boundary line, effectively directing that the jury base its determination of the location of the boundary line upon the Cauley map submitted by plaintiffs Nichols, but included both the Cauley map and the Manning map, submitted by defendants Wilson, as options for the jury. As the summary judgment order was not applied to the jury instructions, and the jury chose the Manning map, there was no prejudice to the Wilsons. The Nichols did not cross-assign as error the trial judge's failure to follow the summary judgment order.

**Am Jur 2d, Boundaries § 100.**

3. **Boundaries § 33 (NCI4th)— processioning proceeding— j.n.o.v.—improper**

A judgment notwithstanding the verdict, which is merely a renewal of the earlier motion for a directed verdict, is improper in a processioning proceeding. The trial judge in a processioning proceeding determines what the line is as a matter of law and then leaves to the jury where the lines are located on the earth's surface. The jury here was provided with maps from both parties and it was wholly within the jury's province to choose the Manning map.

**Am Jur 2d, Boundaries §§ 117, 118.**

NICHOLS v. WILSON

[116 N.C. App. 286 (1994)]

Appeal by defendants (the Wilsons) from judgment entered 20 October 1992 by Judge W. Russell Duke, Jr. in Wilson County Superior Court. Heard in the Court of Appeals 2 February 1994.

On 17 August 1984, Lawton E. Nichols ("Nichols") filed a petition for a processioning proceeding under N.C.G.S. § 38(1), naming Sanford Earl and Agnes Wilson ("Wilsons") as defendants, to determine the boundary line between contiguous property owned by the parties. N.C. Gen. Stat. § 38(1) (1984). The lines that Nichols sought to have adjudged as the boundary for the parties' property were later depicted in a survey map drawn by J. Charles Cauley ("the Cauley survey"), and based upon the description contained in the deed for their property. The petition further alleged that the Wilsons had trespassed on lands claimed by Nichols.

On 14 September 1984, the Wilsons filed their answer to Nichols's petition in which they denied Nichols's allegation of trespass and sought that the boundary lines be adjudged as represented in a survey map drawn by J.C. Manning ("the Manning survey") in 1983 and based upon the deed from which the Wilsons claim title. On 2 July 1985, the Clerk of Superior Court appointed Preston Lane, Registered Land Surveyor, as surveyor in the proceeding. Lane surveyed the area, made a map and filed his report with the court. On 23 February 1988, pursuant to a joint motion of the parties, the trial court entered an order allowing Glenwood H. and Jean F. Perry to join as petitioners to the processioning proceeding, and allowing all parties to file amended pleadings which would supersede all prior pleadings.

On 8 August 1988, the Wilsons initiated a separate action against Nichols, his wife Zilphia Marie High Nichols, Sarah A. Perry and the Perrys, asserting claims for: 1) quiet title pursuant to N.C.G.S. § 41-10; 2) forcible trespass against defendant Glenwood H. Perry; and 3) declaration of a right to the public use of a cart-way or a neighborhood road in the location shown on the Manning map. For the sake of convenience and clarity, the parties will be referred to hereinafter as "the Nichols/Perrys" and "the Wilsons." On 17 August 1988, the Wilsons filed a Notice of Dismissal pursuant to Rule 41 of the North Carolina Rules of Civil Procedure, dismissing Sarah A. Perry from the case.

On 13 October 1988, the Wilsons sought consolidation of the processioning proceeding with the civil action filed by the Wilsons, and on 14 December 1988, the Clerk of Superior Court ordered the processioning proceeding transferred to the civil docket of the Superior Court for trial by jury on all issues raised by the pleadings. On 30 June

1989, the trial court granted the Nichols/Perrys' motion for summary judgment on the issue of the legal determination of the boundary line, ordering that "the boundary line between the parties is the high water mark of the pond referred to in the pleadings as it existed in June, 1948," effectively directing that the jury base its determination of the location of the boundary line upon the Cauley map. The Wilsons immediately appealed the order to this Court in case No. 897SC1071, which dismissed the appeal as interlocutory on 17 July 1990.

The consolidated cases first came to trial before Judge G.K. Butterfield, Jr. at the 24 February 1992 civil term; after the jury reached a verdict, the trial court ordered a new trial on all issues on 19 June 1992. The cases once again came to trial and a jury was empaneled, at the 31 August 1992 civil session, before Judge W. Russell Duke, Jr. On 9 September 1992, following a full jury trial, arguments of counsel and instructions from the trial court, the jury answered all issues submitted to them in favor of the Wilsons. The Nichols/Perrys then moved for judgment notwithstanding the verdict pursuant to Rule 50 of the North Carolina Rules of Civil Procedure, and the trial court entered judgment n.o.v. on 22 October 1992. On 2 November 1992, the trial court denied the following motions by the Wilsons: 1) Motion to Alter or Amend Judgment; 2) Motion for Relief from Judgment of the Trial Court; and 3) Motion for Entry of Judgment. The Wilsons appeal from the judgment entered by the trial court.

> Connor, Bunn, Rogerson & Woodard, P.A., by David M. Connor; and Narron, Holdford, Babb, Harrison & Rhodes, P.A., by C. David Williams, for plaintiff-appellees (the Nichols and Perrys).
>
> Lee, Reece & Weaver, by Cyrus F. Lee and Rachel V. Lee, for defendant-appellants (the Wilsons).

ORR, Judge.

This case, which involves a property-line dispute, has seen two jury trials and one attempted appeal to this Court in its ten-year history. The property at issue, which includes an old mill pond and surrounding property in Old Fields Township in Wilson County, was once owned in its entirety by J.J. Wilson, who died in 1928. The mill pond was first created when J.J. Wilson built an earthen dam on the Mill Branch, as a source of water power for a grist mill and for other uses, before the turn of the century. During the period of time from about

1925, when the earthen dam washed out, to 1945, when the present dam was built, the pond site was used as fenced pasture, and remnants of the "wire hog-type fence" remain today. The Wilsons claim ownership of the mill pond and the mill site. The Wilsons' property is contiguous to the property of the Nichols and to the property of the Perrys. The dispute in the case is over the appropriate borders of the pond—the Nichols/Perrys claim that the Wilsons have raised the dam over the years and effectively trespassed upon their property by increasing the surface area of the pond. In addition, the Wilsons claim a right to a "cartway" leading from the dam site, crossing a portion of the Nichols' property, to a state road. The Wilsons base their claim to the "cartway" upon an alleged prescriptive easement acquired by their use of the path over the years.

## I. Directed Verdict

[1] The Wilsons assign as error the trial court's directed verdict on the Wilsons' claim of a "cartway" across the property belonging to the Nichols. In considering a motion for directed verdict

> the trial court must review all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor.

*Drain v. United States Life Ins. Co.*, 85 N.C. App. 174, 177, 354 S.E.2d 269, 272 (1987) (quoting *Penley v. Penley*, 314 N.C. 1, 11, 332 S.E.2d 51, 57 (1985)). "A directed verdict is improper unless it appears as a matter of law that plaintiff cannot recover under any view of the facts which the evidence reasonably tends to establish." *Willoughby v. Wilkins*, 65 N.C App. 626, 631, 310 S.E.2d 90, 94 (1983), *disc. review denied*, 310 N.C. 631, 315 S.E.2d 697 (1984).

The following elements are required to establish the existence of an easement by prescription: 1) use that is adverse, hostile or under claim of right; 2) use that has been open and notorious such that the true owner had notice of the claim; 3) use that has been continuous and uninterrupted for a period of at least twenty years; and 4) a substantial identity of the easement claimed throughout the twenty-year period. *Potts v. Burnette*, 301 N.C. 663, 666, 273 S.E.2d 285, 287-88 (1981).

Taking all of the evidence in the light most favorable to the Wilsons, we find that as a matter of law there was inadequate evidence to take the issue of a prescriptive easement to the jury. The Wilsons had the burden of proving the elements necessary for a prescriptive easement, starting with the "use that is adverse, hostile or under claim of right," and failed to meet that burden.

> A "hostile" use is simply a use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under a claim of right. There must be some evidence accompanying the user which tends to repel the inference that it is permissive and with the owner's consent. A mere permissive use of a way over another's land, however long it may be continued, can never ripen into an easement by prescription.

*Potts*, 301 N.C. at 666, 273 S.E.2d at 288 (citations omitted). The Wilsons presented no evidence to rebut the presumption that any past use of the "cartway" was indeed permissive. In fact, testimony of one witness indicated that the owner of the property at the time the "cartway" was in use, J.S. Wilson, actually agreed to let people use the path.

Furthermore, there was no evidence presented by the Wilsons to show that the "cartway" was used under a "claim of right" by those other than the owners. The Wilsons did not engage in the upkeep of the "cartway" and furthermore indicated that they had used the "cartway" with the permission of the owners and not because they thought they had a right to use it. Therefore, even taking all of the evidence presented in the light most favorable to the Wilsons, we find that the trial judge's directed verdict on the issue of a prescriptive easement was not error.

## II. Summary Judgment

[2] The Wilsons assign as error the trial court's entry of summary judgment on the issue of the means of determining the location of the boundary line. The Wilsons contend that the trial court erred in determining that the Cauley map's representation of the boundary line should be the guide for the jury's determination of the location of the boundary. However, we need not address the merits of the court's determination, as at trial the court included both the Manning and the Cauley maps as the options for the jury to select between in the jury instructions. As the summary judgment order was not applied to the jury instructions, and the jury actually chose the boundary as

described in the Manning map, we find that there was no prejudice to the Wilsons, and therefore no need for further review of the summary judgment.

We note that the Nichols/Perrys did not cross-assign as error either the trial judge's failure to follow the determinations in the summary judgment order or the content of the jury instruction. Rule 10(d) of the North Carolina Rules of Appellate Procedure provides that

> [w]ithout taking an appeal an appellee may cross-assign as error any action or omission of the trial court which was properly preserved for appellate review and which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken.

N.C.R. App. P. 10(d).

## III. The Judgment N.O.V.

**[3]** The Wilsons also assign as error the trial court's entry of judgment notwithstanding the verdict. Rule 50 of the North Carolina Rules of Civil Procedure is entitled "[m]otion for a directed verdict and for judgment notwithstanding the verdict." Rule 50 states that "a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict" and that "the motion shall be granted if it appears that the motion for directed verdict could properly have been granted . . . ." N.C.R. Civ. P. 50(b)(1). As our Supreme Court has explained, "if the motion for directed verdict *could have been properly granted,* then the subsequent motion for judgment notwithstanding the verdict should also be granted." *Bryant v. Nationwide Mut. Fire Ins. Co.,* 313 N.C. 362, 369, 329 S.E.2d 333, 337 (1985) (emphasis added). However, our Supreme Court has also held that "a motion for judgment notwithstanding the verdict is cautiously and sparingly granted." *Id.*

This case is effectively still a processioning proceeding, the "primary purpose of which is to establish the correct location of the disputed dividing line." *Sipe v. Blankenship,* 37 N.C. App. 499, 503, 246 S.E.2d 527, 530 (1978), *cert. denied,* 296 N.C. 411, 251 S.E.2d 470 (1979). This Court has held that "[a] directed verdict is *never* proper when the question is for the jury, and in processioning proceedings the determination of the boundary is for the jury." *Beal v. Dellinger,* 38 N.C. App. 732, 734, 248 S.E.2d 775, 776 (1978) (emphasis added).

In a processioning proceeding, the trial judge determines "what" the line is "as a matter of law" and then leaves to the jury "where these lines are located on the earth's surface." *Pruden v. Keemer*, 262 N.C. 212, 218, 136 S.E.2d 604, 608 (1964). Furthermore, "[i]t is the province of the jury to locate the line. It is for them to say, on the conflicting testimony and *under the instructions of the court*, where the line is." *Cornelison v. Hammond*, 225 N.C. 535, 536, 35 S.E.2d 633, 634 (1945) (emphasis added). The Nichols/Perrys' own Request for Jury Charge provided the jury with both the Cauley and Manning maps as options for determining where the line could be drawn. It was wholly within the province of the jury to choose the Manning map. Therefore, a judgment notwithstanding the verdict, which is, after all, merely a renewal of the earlier motion for directed verdict, is improper in a processioning proceeding and in this case.

Because of our determinations on the assignments of error discussed above, we need not address the Wilsons' remaining assignments of error. Accordingly, we reverse the trial court's entry of judgment notwithstanding the verdict and remand this case to the trial court for reinstatement of the jury verdict.

Reversed and remanded.

Judges COZORT and GREENE concur.