D.A.N. JOINT VENTURE, III, L.P.
v.
JANICE P. FENNER.
No. COA06-628
North Carolina Court of Appeals
Filed February 20, 2007
This case not for publication
Pritchett & Burch, PLLC, by Jonathan E. Huddleston, for plaintiff-appellant.
Vandeventer Black, LLP, by Robert P. Trivette, for defendant-appellee.
STEELMAN, Judge.
Upon plaintiff's suit for monies owed under a credit line agreement, the jury returned a verdict of "none." Since this verdict was not supported by the evidence, we reverse and remand for a new trial.
Plaintiff filed this action on 2 April 2002 against Janice P. Fenner ("defendant") to recover principal and interest due on a credit agreement executed on 29 March 1995 by defendant and her former husband, William Fenner, Jr., ("husband"). Defendant and husband signed the agreement with Nations Credit as joint applicants and received an advance for the full amount of the line of credit, $10,000.00, on 3 April 1995. Defendant and husband made their last payment towards the loan in the amount of $200.00 on 1 June 1998. At that time the balance on the loan was $9,654.34.
Defendant and husband separated on 1 October 1997, and in November 1997, defendant and husband entered into a separation agreement. This agreement provided that husband would be responsible for the Nations Credit debt. The court entered a judgment finalizing defendant's divorce from husband on 10 May 1999.
On 16 December 1998, Nations Credit sold its interest in the loan to Cadle Company, and on 15 March 1999, Cadle Company sold its interest in the loan to plaintiff. When plaintiff purchased the loan, the balance owed on the loan was $10,490.23.
On 4 August 1999, husband filed for bankruptcy, and as a result, husband's debt to Cadle Company was extinguished.
On 2 April 2002, plaintiff filed a complaint against defendant to recover the balance due on the defaulted loan together with attorneys' fees. On 8 July 2002, defendant filed an answer asserting as affirmative defenses the applicable statute of limitations and lack of consideration. Defendant also filed a third party complaint against husband seeking indemnity and contribution based upon the provisions of the separation agreement. On 19 August 2002, default was entered against husband.
On 2 April 2003, plaintiff filed a motion for summary judgment. This motion was denied on 31 August 2004. This case went to trial before Judge Parker and a jury on 10 October 2005. The trial court denied defendant's motion for directed verdict at the close of plaintiff's evidence. Defendant renewed her motion for a directed verdict at the close of all of the evidence, and plaintiff also moved for directed verdict. Both motions were denied, and the trial court submitted a single issue to the jury: "What amount, if any, does the defendant . . . owe the plaintiff, D.A.N. Joint Venture, III, L.P., on the account?" The jury answered this issue: "None."
The court entered judgment on 13 October 2005, dismissing plaintiff's action, with prejudice.
On 25 October 2005, plaintiff filed a motion for judgment notwithstanding the verdict and a motion for a new trial. The trial court denied both motions.
Plaintiff appeals from the judgment entered on 13 October 2005 and from orders denying its motions for summary judgment, judgment notwithstanding the verdict and new trial.

I: Summary Judgment
In its first argument, plaintiff contends that the trial court erred in denying plaintiff's motion for summary judgment. We disagree.
Our Supreme Court has previously held:
The purpose of summary judgment is to bring litigation to an early decision on the merits without the delay and expense of a trial when no material facts are at issue. After there has been a trial, this purpose cannot be served. Improper denial of a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the merits by the trier of the facts, either judge or jury.

Harris v. Walden, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985) (emphasis added) (internal citations omitted); see also In re Will of Yelverton, __ N.C. App. __, 631 S.E.2d 180 (2006). This assignment of error is without merit.

II: Directed Verdict and Judgment Notwithstanding the Verdict
In its second argument, plaintiff contends that the trial court erred by denying its motion for directed verdict at the close of all of the evidence and its motion for judgment notwithstanding the verdict. We disagree.
"A motion for judgment notwithstanding the verdict is essentially a renewal of an earlier motion for a directed verdict[,]" and the standards of review are the same. Drain v. United Services Life Ins. Co., 85 N.C. App. 174, 176, 354 S.E.2d 269, 272 (1987) (citing Dickinson v. Pake, 284 N.C. 576, 201 S.E.2d 897 (1974)). "Accordingly, if the motion for directed verdict could have been properly granted, then the subsequent motion for judgment notwithstanding the verdict should also be granted." Penley v. Penley, 314 N.C. 1, 10, 332 S.E.2d 51, 57 (1985) (quoting Bryant v. Nationwide Fire Insurance Co., 313 N.C. 362, 329 S.E.2d 333 (1985)). A motion for a judgment notwithstanding the verdict may not address issues on appeal not raised in the motion for a directed verdict. See Drain at 176, 354 S.E.2d at 272 (1987); Miller v. Motors, Inc., 40 N.C. App. 48, 51, 251 S.E.2d 925, 927 (1979). Therefore, we consider these two motions together.
Plaintiff did not state the grounds upon which it moved for directed verdict at the close of all evidence. Plaintiff's failure to state grounds for its motion provides plaintiff no foundation upon which to subsequently move for judgment notwithstanding the verdict. See generally, Boone Lumber, Inc. v. Sigmon, 103 N.C. App. 798, 800, 407 S.E.2d 291, 293 (1991) (stating that "[a] motion for directed verdict at the close of all evidence is an absolute prerequisite to the post verdict motion for judgment notwithstanding the verdict"). Plaintiff may not create new grounds on appeal to support a legal theory not anticipated before the trial court. See generally, Anderson v. Assimos, 356 N.C. 415, 417, 572 S.E.2d 101, 103 (2002). This assignment of error is without merit.

III: New Trial
In its next argument, plaintiff contents that the trial court erred by denying its motion for new trial. We agree.
"Under N.C. Gen. Stat. § 1A-1, Rule 59, a party may obtain a new trial either for errors of law committed during trial or for a verdict not sufficiently supported by the evidence." Eason v. Barber, 89 N.C. App. 294, 297, 365 S.E.2d 672, 674 (1988). The trial court's ruling on a motion for new trial pursuant to N.C. Gen. Stat. § 1A-1, Rule 59, is not reviewable on appeal absent manifest abuse of discretion. Mumford v. Hutton & Bourbonnais Co., 47 N.C. App. 440, 445, 267 S.E.2d 511, 514 (1980).
Rule 59(a)(7) authorizes the trial court to grant a new trial based on the "insufficiency of the evidence to justify the verdict or that the verdict is contrary to law[.]" N.C. Gen. Stat. § 1A-1, Rule 59(a)(7). "[I]n this context, the term ' insufficiency of the evidence' means that the verdict 'was against the greater weight of the evidence.'" In re Will of Buck, 350 N.C. 621, 624, 516 S.E.2d 858, 860 (1999). "The trial court has discretionary authority to appraise the evidence and to ' order a new trial whenever in his opinion the verdict is contrary to the greater weight of the credible testimony.'" Id. (quoting Britt v. Allen, 291 N.C. 630, 634, 231 S.E.2d 607, 611 (1977)). When the evidence supports the conclusion that the jury committed a palpable error, the trial court has the duty to set aside the verdict on that issue to prevent a miscarriage of justice. See Hussey v. Atlantic Coast Line R.R., 183 N.C. 8, 9-10, 110 S.E. 599, 599-600 (1922).
Our review of the trial court's discretionary ruling to grant or deny "a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the [trial] judge." Worthington v. Bynum and Cogdell v. Bynum, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982). This Court "'should not disturb a discretionary Rule 59 order unless it is reasonably convinced . . . that the trial judge's ruling probably amounted to a substantial miscarriage of justice.'" Anderson v. Hollifield, 345 N.C. 480, 483, 480 S.E.2d 661, 663 (1997) (quoting Campbell v. Pitt County Memorial Hosp., 321 N.C. 260, 265, 362 S.E.2d 273, 275 (1987)).
In the instant case, we are so convinced. All of the evidence shows that on 29 March 1995, defendant and husband entered into, and subsequently breached, a credit agreement with Nations Credit. The agreement stated:
I ask [Nations Credit] to give me a Perona Line Credit account with a credit line as shown here: Credit Line $10,000.00. . . . I agree to pay back all advances [Nations Credit] make[s][.] . . . I will be in default if I fail to make any minimum payment when due or break any other promise made in this agreement. If I default, [Nations Credit] may demand immediate payment of my entire account balance plus accrued finance charge subject to any prior notice of default and right to cure required by law. I agree to pay court costs and reasonable attorney's fees if and to the extent permitted by state law after default and referral to an attorney who is not your salaried employee.
Husband and defendant received an advance for the full amount of the line of credit, equaling $10,000.00, on 3 April 1995.
Defendant and husband separated, and the court entered a judgment of absolute divorce. The divorce judgment incorporated the parties' separation agreement "as an order of this Court." The separation agreement stated that husband shall "assume all liability arising" from and "indemnify and hold [defendant] harmless of any and all loss [she] might suffer as a result of such liabilities[,]" stemming from the credit agreement in question.
On 19 July 2000, Cadle Company sent a letter to defendant stating that defendant's account was in default and demanding payment in full. Defendant made no payments but responded by sending plaintiff copies of her separation agreement and divorce judgment. After several phone conversations, plaintiff's legal counsel sent defendant a letter again stating that defendant was past due on the balance of her loan, that pursuant to the provisions of the agreement plaintiff was accelerating the entire amount due, and demanding a payment of $15,870.06.
At the time of the trial, 10 October 2005, the total amount due, including accrued interest was $21,094.78.
Throughout the course of litigation, defendant argued that "my divorce decree and separation agreement released me from any claim on the Nations Credit loan," because "my ex-husband had assumed responsibility for any debt owed." However, neither Nations Credit, Cadle Company, nor plaintiff were parties to the separation agreement, and therefore, they are not contractually bound by the terms of the separation agreement. In fact, defendant and husband entered into the separation agreement long after defendant signed the credit line agreement. The separation agreement had no legal effect on defendant's obligation to satisfy the jointly-held debt in the event of husband's breach, even though husband contractually agreed to assume the debt in question. See First Union Nat. Bank v. Naylor, 102 N.C. App. 719, 721-22, 404 S.E.2d 161, 162 (stating, in the event of husband's breach, husband's assumption of marital debt in a separation agreement has no effect upon wife's obligation to creditors of jointly-held debt or creditors' ability to collect from wife); see also, Grimes v. Grimes, 47 N.C. App. 353, 355, 267 S.E.2d 372, 373 (1980) (stating that where the wife executes a promissory note as a co-maker, she is primarily liable, and furthermore, nothing else appearing, any person signing his or her name at the bottom of the face of a promissory note is a maker, and is primarily liable). Defendant's repeated assertions that the separation agreement extinguished her obligation to plaintiff were erroneous as a matter of law.
By executing the credit line agreement, defendant agreed to be personally liable for this debt, obligating her to pay the debt, regardless of the actions of her husband. See, e.g., Trust Co. v. Creasy, 301 N.C. 44, 269 S.E.2d 117 (1980).
The issue submitted to the jury read: "What amount, if any does the defendant . . . owe the plaintiff, D.A.N. Joint Venture, III, L.P., on the account?" We note that the trial judge did not submit to the jury issues of contract formation, the validity of the contract, or whether the defendant had breached the contract. Rather, the only issue was the amount owed. This was an acknowledgment by the trial court that defendant had entered into a valid contract and had breached the contract. This case is similar to Housing, Inc. v. Weaver, 305 N.C. 428, 290 S.E.2d 642 (1982), in which the jury delivered a verdict determining that the plaintiff was liable to the defendant, but thereafter found that the defendant should "recover no damages as a consequence of the plaintiff's liability." Id. at 438, 290 S.E.2d at 648. The trial court in Housing set aside the verdict and the judgment, and entered judgment for the amount of the "principal sum of the note," plus interest and "reimbursable expenses[.]" Id. Thereafter, this Court and the North Carolina Supreme Court affirmed the trial court. This Court stated that "the undisputed evidence" in Housing "and the plaintiff's admissions establish the amount of defendant's damages as a matter of law." Housing, Inc. v. Weaver, 52 N.C. App.662, 675, 280 S.E.2d 191, 199 (1981); see also United States v. Simmons, 346 F.2d 213, 215 (5th Cir. 1965) (holding that "[t]he absence of any rational basis for the jury's verdict makes it a mistake of law for the trial judge to deny the motion for a new trial").
This is a contract case and is distinguishable from tort cases where, on the issue of damages, "[a]n appellate court . . . should not disturb an able trial judge's ruling on a discretionary matter merely because it believes some other award for damages would be more appropriate." Worthington v. Bynum, 305 N.C. 478, 488, 290 S.E.2d 599, 608 (1982) (Carlton, J., concurring); see also Anderson v. Hollifield, 345 N.C. 480, 481-83, 480 S.E.2d 661, 663-64 (1997) (holding that this Court erred in reversing and remanding a trial court's judgment denying a new trial on the issue of damages, which was "related solely to plaintiff's acute cervical sprain[,]" because the jury "weigh[s] the evidence" and "determine[s] the credibility of witnesses"). Unlike the tort cases, the amount of damages in this case did not rest upon credibility determinations, nor did it encompass imprecise measures of damages such as permanent injury or pain and suffering. The evidence presented to the jury was uncontradicted that defendant owed plaintiff the balance of principal plus interest under the note, together with attorneys' fees.
The evidence at trial was insufficient to support the jury's verdict of "none," and the trial court erred in denying plaintiff's motion for a new trial.

IV: Cross-Assignment of Error
Defendant requests that we address issues regarding whether the applicable statute of limitations bars plaintiff's claim and whether the contract fails for lack of consideration. We decline to do so.
"The scope of this Court's review on appeal is limited to a consideration of those assignments of error set out in the record on appeal in accordance with Rule 10 of the Rules of Appellate Procedure." Harllee v. Harllee, 151 N.C. App. 40, 50, 565 S.E.2d 678, 684 (2002); N.C. R. App. P. 10(d) (2005).
N.C. R. App. P. 10 (d) (2005) provides, in pertinent part:
Without taking an appeal an appellee may cross-assign as error any action or omission of the trial court which was properly preserved for appellate review and which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken.
Id. In Carawan v. Tate, 304 N.C. 696, 701, 286 S.E.2d 99, 102 (1982), the Supreme Court discussed the meaning of Rule 10(d):
Rule 10(d) provides protection for appellees who have been deprived in the trial court of an alternative basis in law on which their favorable judgment could be supported, and who face the possibility that on appeal prejudicial error will be found in the ground on which their judgment was actually based.
Id.
In the instant case, the only assignments of error set out in the record on appeal are those brought forward and argued by plaintiff-appellant. Defendant-appellee was permitted by the Rules of Appellate Procedure to present issues for this Court's review. See N.C. R. App. P. 10(d) (2005). The statute of limitations and lack of consideration arguments could certainly provide an alternate basis for upholding the trial court's judgment. However, defendant did not cross-assign error to the trial court's failure to render judgment on these grounds. Defendant has not properly preserved these grounds for appellate review. See Harllee at 50, 565 S.E.2d at 684; see also Howard v. Oakwood Homes Corp., 134 N.C. App. 116, 122, 516 S.E.2d 879, 883 (1999). We decline to address the additional arguments raised in defendant-appellee's brief.
For the foregoing reasons, we conclude that the trial court erred in not granting plaintiff's motion for new trial. We reverse and remand for a new trial on the merits.
REVERSED and REMANDED.
Judges McGEE and BRYANT concur.
Report per Rule 30(e).